946 F.2d 895
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert J. SISNEROS, Plaintiff-Appellee,
v.
DETROIT STRIP DIVISION CYCLOPS CORPORATION, Defendant-Appellant.
 No. 90-1931.
 United States Court of Appeals, Sixth Circuit.
 Oct. 9, 1991.
 
 Before MERRITT, Chief Circuit Judge, RALPH B. GUY and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant, Detroit Strip Division, Cyclops Corporation (Cyclops), appeals from a judgment resulting from a jury verdict awarding $439,555.31 to the plaintiff, Robert Sisneros, for his Toussaint wrongful discharge claim.
 
 
 2
 Defendant argues the following: 1) the district court erred when it denied defendant's motion for summary judgment; 2) the district court erred in denying defendant's motion for a directed verdict; 3) the district court erred in denying defendant's motion for a judgment notwithstanding the verdict (JNOV); 4) the district court erred in denying defendant's motion for a remittitur or in denying defendant's motion to alter or amend judgment; and 5) the district court erred in denying defendant's motion for a new trial. We find that the jury instructions regarding mitigation of damages were confusing and, thus, remand for a new trial on the damage issue only.
 
 I.
 
 3
 Sisneros was hired by Cyclops in December 1963. He began his employment as a laborer. From 1963 until 1986, Sisneros held a variety of positions. In September 1986, he became a plant manager. He had several supervisors in this position. At the time of his discharge, James Fink was his supervisor.
 
 
 4
 Soon after Fink began with the company, he temporarily reassigned Sisneros to a district sales position in Illinois. Fink also temporarily replaced Sisneros with Dennis Kovach. Kovach was the former plant manager at the defendant's facility in New Haven, Connecticut. Prior to Kovach's transfer, Cyclops' New Haven facility was shut down.
 
 
 5
 On March 13, 1989, Fink made the reassignments permanent. He offered Sisneros a district sales position in Chicago at the same rate of pay that Sisneros was earning as plant manager. Sisneros declined the offer. After Sisneros rejected the offer of the position in Chicago, Fink offered him a technical sales position in the Detroit area at a reduced rate of pay. Plaintiff ultimately accepted this position.
 
 
 6
 After the plaintiff accepted the technical sales position, he complained to some company employees that he had been demoted and that he had suffered a reduction in pay. When Fink was informed of the plaintiff's complaints, he decided to terminate plaintiff for displaying a poor attitude and for revealing confidential salary information. At the time of his termination, plaintiff's annual salary was $50,780.
 
 
 7
 At plaintiff's termination meeting, Fink offered the plaintiff 15 weeks of severance pay. The plaintiff accepted the offer of severance pay and was paid a total of $13,149.52.
 
 
 8
 Plaintiff initiated a wrongful discharge action against Cyclops on June 7, 1989. Plaintiff argued that he had a just-cause employment contract and, thus, could not be fired without reason. The defendant filed a motion for summary judgment that was denied on January 29, 1990.
 
 
 9
 On April 30, 1990, one year after plaintiff's discharge, defendant made an offer of reinstatement to the plaintiff. Plaintiff rejected the offer.
 
 
 10
 A two-day jury trial commenced on May 3, 1990, and at the close of the plaintiff's proofs the defendant moved for a directed verdict. Plaintiff summarizes the evidence he presented at trial as follows:
 
 
 11
 The statements of the Plaintiff of his knowledge of the company policy and practice to terminate only for good cause, coupled with his implementation of the company's disciplinary policy of progressively disciplining salaried employees, and then only terminating them for cause, coupled with the admissions of Fink [defendant's president] with regard to the company policy of terminating only for cause, absolutely create[d] a question of fact for the jury with regard to the terms of the implied contract of employment of the Plaintiff.
 
 
 12
 Defendant's motion for a directed verdict was denied by the district court.
 
 
 13
 A jury subsequently returned a verdict for the plaintiff in the amount of $439,555.31. The form was a general verdict with special interrogatories. Question No. 5 of the jury verdict form read as follows:
 
 
 14
 5. Did the Defendant prove that Sisneros failed to mitigate his damages, or refuse an unconditional offer of reinstatement?
 
 Yes x No
 
 15
 The jury answered this question in the affirmative and was directed, as a result, to answer Question No. 6. Question No. 6 on the jury verdict form read as follows:
 
 
 16
 6. State the dollar amount that the damages should be reduced if Defendant proved that Sisneros failed to mitigate?
 
 
 17
 $1,393,307.31
 
 
 18
 Because the jury found that plaintiff proved that he was entitled to damages in the amount of $1,832,862.62, and found that he failed to mitigate by $1,393,307.31, the jury found that Sisneros was entitled to damages in the amount of $439,555.31.
 
 
 19
 Before the jury began deliberation, the defendant objected to plaintiff's proposed Question No. 5, which, as originally drafted, only asked whether the plaintiff had mitigated his damages, arguing that defendant's objective at trial was not to prove that the plaintiff had failed to mitigate his damages but that instead plaintiff had failed to mitigate his damages by rejecting an unconditional offer of reinstatement. The district court responded to the defendant's objection by adding the final phrase of the question, "or refuse an unconditional offer of reinstatement."
 
 
 20
 Again, the defendants objected to the verdict form. The defendants argued that the form failed to direct jurors that, if they found that there was an unconditional offer of reinstatement, damages should no longer accrue after the time the offer was rejected. The district court rejected this argument.
 
 
 21
 After the jury returned its verdict, it submitted its written calculations. These calculations were made a part of the record and are as follows:
 
 
 22
 Starting 50,780 salary
 3,132 healthcare
 5,400 pension
 682,088 based on 11.50 yrs [number of years until retirement]
 -18,000 salary [salary for position held at time of trial]
 -17,532.69 severance pay
 -----------
 646,555.31 total
 -207,000 11.50 yrs x 18,000
 -----------
 439,555.31 damages
 
 
 23
 The defendant then filed a motion for JNOV arguing that the plaintiff failed to set forth sufficient evidence to demonstrate that he had a just-cause employment contract. Also, the defendant argued that the award of 11.5 years of front pay was improper in light of the fact that the jury had found that the plaintiff rejected an unconditional offer of reinstatement.
 
 
 24
 Additionally, the defendant filed motions to alter or amend the judgment, for remittitur, or, in the alternative, for a new trial. The supporting rationale for defendant's motions was that the jury's calculations were in direct legal conflict with the jury's findings that defendant proved that plaintiff had refused an unconditional offer of reinstatement. In light of the jury's findings, defendant argued that plaintiff was only entitled to $25,241.80 in damages.
 
 
 25
 Defendant appealed.
 
 II.
 
 26
 Although under Michigan law employees are generally terminable at-will, the Michigan Supreme Court, in Toussaint v. Blue Cross & Blue Shield of Michigan, 408 Mich. 579 (1980), held that "an employer's express agreement to terminate only for cause, or statements of company policy and procedure to that effect, can give rise to rights enforceable in contract." Id. at 610. The Toussaint court held that a just-cause provision in an employment contract can "become part of the contract either by express agreement, oral or written, or as a result of an employee's legitimate expectations grounded in an employer's policy statements." Id. at 598.
 
 
 27
 The plaintiff asserts that the the testimony of Cyclops' president, James Fink, supported the plaintiff's belief that he had a just-cause employment contract. We agree. Fink testified in his deposition, which was before the court when it ruled on the defendant's motion for summary judgment, that "[t]here ha[d] to be good cause" for terminating the plaintiff. At trial, Fink testified that it was both the practice and policy of Cyclops to discharge only for just cause. We cannot disregard the testimony of Cyclops' own president as to Cyclops' policies and practices. We thus conclude that, under Toussaint, Fink's testimony supports the plaintiff's belief that he had a just-cause employment contract. As a result, the district court properly denied the defendant's motion for summary judgment and its motion for a directed verdict.
 
 
 28
 We do, however, find that the jury instructions regarding damages were impermissibly confusing. Question No. 5 of the verdict form asks if the defendant proved that "Sisneros failed to mitigate his damages, or refuse an unconditional offer of reinstatement." The jury answered yes to this question. The next question on the verdict form, Question No. 6, asks how much the damages should be reduced if the defendant "proved that Sisneros failed to mitigate." The jury responded that this amount was $1,393,307.31. The defendant asserts that it did not attempt to show that Sisneros failed to mitigate his damages but that it attempted only to show that Sisneros refused an unconditional offer of reinstatement. Thus, defendant argues that Question No. 6, which addressed only mitigation, was confusing. We agree.
 
 
 29
 Also, the jury was instructed that, if it found that the defendant made an unconditional offer of reinstatement, damages could not be awarded for loss of compensation after that date. Once the jury found that Sisneros, as evidenced by its answer to Question No. 5, had refused an unconditional offer of reinstatement, the verdict form failed to provide for a way in which to calculate damages, based on the date the plaintiff rejected the unconditional offer of reinstatement.
 
 
 30
 REVERSED and REMANDED for a new trial on the issue of damages.